No. 4286.

## Court of Appeal, Parish of Orleans.

## J. D. SIMMS & SONS vs. NEW ORLEANS AND NORTH-EASTERN RAILROAD COMPANY.

The doctrine announced in Lehman, Stern & Co., Ltd. vs. Morgan's La. & Tex. R. R., etc. Co., 115 La. 1, to the effect that as common carriers cannot escape liability for loss or damage of the things intrusted to their case unless such loss or damage has been caused by accidental and uncontrollable events, id est by a fortuitous event, or by irresistible force; or by a defect of the thing itself, or by the fault of the shipper, the carrier must prove the precise cause of the loss or damage otherwise there is no proof of loss by an event which would relieve the carrier, applies to the carriage of "live freight" as well as of "dead freight."

Appeal from Civil District Court, Division "A."

Foster, Milling, Godchaux and Sanders and A. Brian, for Plaintiff and Appellee.

Hall and Monroe, for Defendant and Appellant.

MOORE, J. The only question involved in this cause, as we appreciate it, is whether the rule affirmed in Lehman Stern & Co., Ltd., vs. Morgan's Louisiana and Texas Railroad, etc., Co. 115 La. 1, to the effect that as common carriers cannot escape liability for loss or damage of the thing intrusted to their care except they are caused by accidental and uncontrollable events, C. C. 2754, or by a defect of the thing itself, or by the fault of the shipper the carrier must prove the precise cause of the loss or damage, otherwise it cannot be determined that the loss or damage has been caused by an event which would relieve the carrier, applies to live freight as well as to "dead" freight.

The facts, sufficient for this inquiry, are that plaintiffs shipped a carload of mules from East St. Louis consigned to themselves at New Orleans, under through bill of lading over the Mobile and Ohio Railroad to Meridian, Miss., thence to New Orleans by the defendant road, which was the delivering carrier. The mules (25 in number) were delivered at East St. Louis to the initial carrier in good order and apparently in like con-

dition at Meridian to defendant's road;- at least, there is no evidence that they were not so received by the dfendant company. That twenty-four of the mules were delivered by the last carrier, the defendant Company, to the consignees at destination in good order, but ,another one of the lot was so badly injured that plaintiffs were unable to convey it more than a few blocks from defendant's stock-pen, where the mules were delivered, and that as a result of the injury the mule died the very night of its arrival at destination.

Whilst it is conclusively established to our satisfaction that the mule was injured whilst in transit, and probably as it is testified to, recently injured, and that it died as a result of that injury, no one assigns any particular cause or origin of the injury.

The answer of the defendant is simply a general denial, and its evidence was confined to establishing the fact that it was prudent and careful in the operation of its train, and that the same was not roughly handled. That ordinary care and attention usually given by diligent men on like occasions were given by the defendant Company in operation and running of its trains is established; but is this sufficient to relieve it from liability? May the defendant Company be relieved of its liability without showing that the loss was occasioned by "accidental and uncontrolable events;" or by a defect in the thing itself, or by the shipper's fault, and can it show this unless it prove the precise cause of the loss? In the Lehman-Stern case supra the Supreme Court held clearly to the doctrine that: "The carrier must prove the precise cause of the loss. It will not suffice to prove merely due diligence, but the carrier must prove, moreover, that the accident was occasioned by a fortuitous event, or by irresistible force, or by a defect of the thing itself, or by the fault of the shipper."

And this is repeated in varying forms in the opinion, as for instance: "The civil law * * * does require the carrier to prove the precise cause of the loss, that it was impossible for human prudence to foresee or prevent the loss, and that no act of imprudence or negligence is chargeable to the carrier."

And again: "Where the cause * * * is unknown or unexplained, there is no proof of loss by an event which could not be prevented or resisted."

But it is said by the learned counsel for the defendant Company that, conceding, *arguendo,* the correctness of the rule announced in the Lehman case, supra, it has no application to the carriage of live stock. The law condemning the liability of carriers for loss or damage of the thing intrusted to their care, specially limits their exemption from liability therefor when they have been "carried by accidental and uncontrolable events." C. C. 2754. It speaks of the "things" intrusted to the care of the carrier. It makes no distinction as to the character of the "thing" which may be intrusted to the carrier for carriage as freight, and however cogent the reasons might be for the necessity of a change of the law in this particular, it is a matter which must be addressed to another and different department of the government, and not to the Courts. The law, as we read it, makes no difference as to the character of the "thing" intrusted to the care of the carrier, for the loss or damage of which he is liable; nor does it provide that for the loss or damage of certain character of "things" intrusted to its care it may be relieved from liability when the "loss or damage has been caused by accidental and uncontrolable events," and that as to other "things" it will not. In nearly all the States where the common law prevails the rule is now well established that the liability of the carrier of livestock is the common-law liability of common carriers of other property. Am. and Eng. Ency. of Law, vol. 3, page 6. Under our code the carrier of livestock incurs no greater responsibility and there are no less limitations on his liability than on the carrier of other property.

It is true that in the Lehman-Stern case, supra, the "thing" intrusted to the carrier was "dead" freight; but that was merely the accident of the case. The Court was engaged there in interpreting the meaning of the words "accidental and uncontrolable events," and in announcing the rule as to what must be proven by the carrier in order to claim release from liability for loss or damage for "the things intrusted to their care," when they are lost or damaged by these events. Whether the carriage in that case was of one kind of property, "thing," or another did not and could not enter into the inquiry at all.

Being of opinion that the instant case falls under the operation of the rule announced in Lehman-Stern & Co., Ltd., vs. Morgan's Louisiana & Texas Railroad, etc., 115 La. 1, the judg-

ment which was in favor of plaintiff for one hundred dollars must be affirmed.

The prayer of the petition was for $235, the actual value of the mule, but the contract of affreightment stipulates that in consideration of the railroads agreeing to transport the stock at the reduced rate of $100 per car to New Orleans, which was the amount paid by plaintiffs, all damage to the stock for which the companies may be liable, shall not exceed the sum of $100 per head for mules; hence we will not increase the judgment as prayed for by appellees in their answer to this appeal.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.

ESTOPINAL, J., dissents.

April 6, 1908.

## DISSENTING OPINION.

ESTOPINAL, J. This is a suit to recover the value of a certain mule transported by the defendant Company, plaintiffs alleging that they shipped a carload of mules from St. Louis to New Orleans, via the Mobile and Ohio Railroad to Meridian, Miss., and from that point to destination (New Orleans), via the defendant Company, the New Orleans and Northeastern Railroad Company, and that through the gross negligence and carelessness of the Defendant Company in hauling said car of mules between Meridian and New Orleans, one of the mules was injured and died a short time after being unloaded.

Plaintiffs contend that though they affixed their signature to certain conditions and waivers releasing the carrier from liability beyond one hundred dollars ($100.00) per mule in the event of the loss of one, the contract was without consideration and not binding upon them.

The stipulations in the contract read as follows:

"Now, in consideration of said railroads agreeing to transport the above described live stock at the reduced rate of $100 per car to New Orleans, La., and a free passage to the owner, or his agent, on the train with the stock, the said owner and shipper does hereby assume (and release the said railroad companies from) all risk of injury, loss and damage, or depre-

ciation, which the animals, or either of them, may suffer in consequence of either of them being weak, or escaping, or injuring themselves, or each other; or, in case of overloading, heat, suffocation, fright, viciousness, or of being injured by fire, or the burning of any material, while in the possession of the companies, and from all other damages incidental to railroad transportation which shall not have been caused by the fraud or gross negligence of the said railroad companies."

"And it is further agreed that should damage occur for which the companies may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed: For a stallion or jack, $200; for a horse or mule, $100; cattle, $30; or other animals, $15."

The defendant pleads the general issue.

There was judgment below in favor of plaintiffs for one hundred dollars ($100.00), from which the defendant has appealed. Plaintiffs, answering the appeal, ask that the award to them be increased to two hundred and fifty dloars ($250), the amount originally sued for.

The right of the carrier to tender to the shipper a contract which shall exempt the latter from all liabilities for injury to, or loss of live stock, may not be questioned. Of course, the carrier cannot escape liability, no matter what may be the stipulations and waivers contained in the contract, where it is shown that the loss to the shipper was caused by the gross negligence and carelessness of the carrier. The latter's liability must be measured or determined by the conditions in the contract, the Company being absolved of liability when the live stock has been injured through no fault of its own.

Since, as I have stated, there is nothing to prevent the shipper and carrier from entering into the stipulations limiting liability of carrier found in the contract made in this case, I cannot conceive how the plaintiffs, who signed the same, can now set up that it is not binding on them because this was the only contract presented to them, and that they had no other alternative but to take it.

It is to be presumed that plaintiffs read the document and appreciated its full import and force. It is not in evidence that they raised any objections to the conditions therein contained or inquired for other terms, nor that they demanded to

141

examine the tariff of freight rates, which, it is shown, was accessible to them. It does not avail plaintiffs to urge that the contract here was the usual one, and the only one offered or shown to shippers, nor that he had shipped over the same route for many years, and had never paid more than one hundred dollars ($100.00) a car. Of course, the printed tariffs must control, and shippers being enabled to conveniently examine them, cannot complain that they have been misled.

To my mind the very first lines of the contract here are suggestive that other terms would be made by the carrier at the option of the shipper. The contract says: Now, in consideration of said railroad agreeing to transport the above described *live stock at the reduced rate of* $100, etc." Even though plaintiffs appear to have been disinclined to examine the railroad's tariff, certainly they should have been put on inquiry by the words of the contract just quoted.

Plaintiffs rely upon the decision of the Supreme Court, Lehman-Stern & Co., Ltd., vs. M. La. & Texas R. R. Co., 115 La. 1, as indicating what the duty of the carrier is in establishing proof, and the condition upon which it may escape liability for loss sustained by the shipper.

The decision cited *supra* is not applicable here. The issue involved in that case is distinctly differentiated from those involved here by the difference in the character of the shipment, and other conditions. In the case cited by plaintiffs the issue was the loss of sundry bales of cotton, an inanimate mass not susceptible of damage, loss or injury by acts of its own. A different rule exists and must be applied when the shipment is one of live stock.

The reason for permitting the carrier to make his terms for the transportation of live stock is perfectly obvious. "Animals may injure or destroy themselves, or each other in consequence of their own vitality or natural disposition," and it has been held in other jurisdictions that: "Mere proof that the animal died after delivery to the carrier, and before the end of transportation, is not sufficient to establish liability, but the evidence must further show that the *loss was due to human agency*." Am. & Eng. Ency. of Law and Practice, Vol. 6, p. 524; 48 Mo. App. L. 79; 66 Mo. 486; 119 Pa. St. 577; 13 Atlantic 324; 4 Am. St. Rep. 670; 3 Woods (U. S.) 380; 12 Fed. Cases No. 6949.

I have examined closely the evidence in this record. The defendant has established that nothing untoward or of a nature calculated to cause injury to plaintiffs' carload of mules occurred in the running of this particular train, in other words, that it (the carrier) had been free of negligence or carelessness.

This proof is not weakened, nor even attacked by plaintiffs, and it would appear that the defendant Railroad Company had done its share by producing evidence of care and diligence in the transportation.

In my opinion the burden of proof was on the plaintiffs to show that the loss to the mule was due to human agency, in which case the carrier must show that the loss does not result from his negligence.

Under the stipulations of the contract the owner or his agent was entitled to free transportation and could have availed himself of the privilege of personally accompanying carloads of mules, and thereby inform himself as to the manner in which the injury occurred, whether by human agency, through neglect or otherwise.

I find from the record that notwithstanding the fact that plaintiffs have entirely failed to discharge this burden, defendant Company has produced uncontradicted evidence showing the exercise of care and prudence on its part.

Not only have plaintiffs failed to show that the accident was due to human agency, but on the contrary, their own expert, in his testimony (Dr. McClure, a veterinary) shows that the hemorrhage, from which the mule died, could have been caused by a kick from another mule; that such a kick by an unshod mule would leave no mark.

It is shown that the hemorrhage evidenced itself after the carload of mules had been unloaded from the car and turned out into the pens. The veterinary, on his direct examination, testified as follows:

Q. Give the symptoms the mule exhibited?

A. He had hemorrhage, bleeding through his nose, and also some blood coming from his mouth; he was weak, very weak.

Q. From your experience with mules, can you form any opinion as to what caused the injury to the mule, doctor?

A. Well, in my opinion, it was *an injury of some kind;* of

143

course, that was my opinion.

Q. Well, what sort of injury would you think it was?

A. It was bound to be an injury, the hemorrhage was from the lungs and the mule was very weak at the time.

Q. About how long before you saw the mule did you judge the accident to the mule occurred?

A. That would be hard to say exactly; it would be hard for me to say just when it occurred.

Finally, the witness stated the injury must be a recent one. Beyond this indefinite testimony as to the cause of injury the record is silent. From my appreciation of this testimony, I conculde that the accident or mishap which resulted in the deati of the mule was just such as the terms of the contract for transportation, when negligence is not shown on the part of the carrier, absolve the carrier of liability, to-wit: *"The said owner and shipper does hereby assume (and release tha said railroad companies from) all risk of injury, loss or damage or depreciation which the animals, or either of tham, may suffer in consequence of either of them being weak or escaping, or injuring themselves, or each other, etc."*

The contract herein between the shipper and carrier appears to be legitimate, and is binding on the parties to it.

Under the showing made in this case, and for reasons assigned, I am of opinion that the judgment appealed from is error.

For these reasons I dissent from the opinion and decree.

April 6, 1908.

Rehearing refused June 8, 1908.

Writ granted by Supreme Court Aug. 4, 1908.